## William A. King v. Victoria A. King.

1. VERDICT—*when not disturbed.* A verdict will not be disturbed as against the weight of the evidence where the evidence is conflicting, but on the whole is sufficient to justify the verdict of the jury.

Action on the case for alienation of affection. Appeal from the Circuit Court of Pope County; the HON. WARREN W. DUNCAN, Judge, presiding. Heard in this court at the February term, 1905. Affirmed. Opinion filed September 8, 1905.

D. G. THOMPSON and H. ROBERT FOWLER, for appellant.

WILLIAM H. MOORE, BROWNING & BEAMES, and WHITESIDE & DURFEE, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee brought this suit against appellant, her father-in-law, charging him with having alienated the affections of her husband and caused him to desert and abandon her. There was a verdict against appellant for $250, for which amount judgment was entered by the court.

Appellant complains that the verdict was manifestly against the weight of the evidence, that the court erred in regard to the instructions and in admitting certain evidence for appellee.

Appellee, Victoria A. King, was married to Esco King son of appellant, in February, 1900. For some six months thereafter they lived at the house of appellant, with his wife and family, and were treated as members of the family. Afterwards appellant let them have another house upon the same farm to live in, with land for Esco to farm, and they occupied that place until July 15, 1901, when they separated. After their removal from appellant's house the young couple appear to have had frequent quarrels and disagreements and as a result of the same, Esco, on two occasions prior to the final separation, left his wife, but each time returned to her after a brief absence. At the time of the final separation, the husband and wife had a quarrel

King v. King.

and he started to his father's to get a wagon to take his belongings away from the house. Later on Esco, returned with his brother Charles and appellant and the three loaded the household goods, except those belonging to appellee, and took them to the home of appellant. Subsequently appellee sued her husband for separate maintenance and later on there appears to have been some attempt at a reconciliation.

Appellee testified that when they came after the furniture where she and her husband were living, she asked appellant what he was going to do and he said that "Esco just aimed to go home and he aimed to help him move his things home;" that she requested appellant to leave her and Esco alone and he would not do it; that she got on her knees and begged him to desist from removing the furniture, but that he refused and treated her harshly; that both she and Esco were crying; that she was left alone while they took the first load away and when they came back for a second load she told appellant she was sick and she would like it if he would let the things alone until she got better; that her health was delicate and she was in fact sick that day and that it was about five months before her child was born; that appellant laughed at her and said she was not sick, that she was just putting on; that when the wagon was loaded appellant compelled her to get upon the wagon and go over to his house; that the next morning he brought a buggy to the door and told her to get in and he would take her to her father's; that she asked him to let her stay until she could see her husband, but he refused to do so; that appellant took her to her father's home, where she has since lived.

Appellee was corroborated to some extent by the testimony of her father, Robert S. Barger, who testified that appellant refused to join with him in an attempt to bring about a reconciliation and when asked by the witness to assist in getting them to live together again, said, "No, I will not. It is no use, for I would not live with her if I was him," and also said, "You can just lay all the blame on me if you want to. I am able to bear it. I do not deny what I have

done. I went over there and took him and his things and brought them to my house and I told him I would not live with her, and I would not."

Appellant contradicted in the main the testimony of appellee as to what took place on the day of the separation and denied the conversation alleged to have taken place between him and Barger. Appellant also denied that he had ever encouraged or done anything to bring about the separation between appellee and her husband. The deposition of the husband Esco King, who was then living in Butler county, Missouri, was read in evidence and he testified that the father never in any way advised, assisted or encouraged him in separating from his wife and that he never did anything to induce or influence him to leave her but always advised him to get along with her if he could, but that he could not.

We conclude from a consideration of the evidence in the case, that the married life of appellee and her husband was not harmonious. That they were probably both high tempered and that they had frequent quarrels; that appellant, while not particularly pleased with the marriage of his son, made some attempt at first to adjust their differences, but that later on he came to have a feeling of dislike for appellee, which may have been partly due to her high temper, and in consequence thereof, he directly or indirectly encouraged the separation. While appellee's treatment of her husband does not appear to have been free from blame, yet that fact did not warrant the father in interfering and encouraging the son either in disliking or abandoning his wife. No doubt the jury, while finding against the father, took into consideration the fact of the frequent quarrels between appellee and her husband, as is shown by the very moderate size of the verdict.

We have failed to find any material error in the ruling of the court upon questions of evidence or in the matter of the instructions, and the evidence, while conflicting, was sufficient upon the whole to justify the verdict of the jury.

The judgment of the court below will therefore be affirmed.                                    *Affirmed.*